UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HAROLD W. TURNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:16-cv-02169-LJM-MJD |
| ) | |
| NANCY A. BERRYHILL Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Harold W. Turner requests judicial review of the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (the "Commissioner"), who denied Turner's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416, 423, & 1382c.

### I. BACKGROUND[1]

### A. PROCEDURAL HISTORY

In June 2013, Turner filed claims for DIB and SSI, alleging disability beginning in January 2013. R. at 11, 285-94. The Commissioner initially denied Turner's claims and upon reconsideration. R. at 157-60, 169-83. Turner sought appeal and requested a hearing before an Administrative Law Judge ("ALJ"). R. at 184-88. In May 2015, Turner,

---

[1] The parties do not dispute Turner's relevant medical or opinion evidence, which is hereby incorporated by reference from the parties' briefs. Dkts. 15, 21, 22. The Court will reference only those facts necessary to address the parties' arguments in its Analysis.

represented by counsel, testified at a hearing in front of an ALJ, as did a vocational expert ("VE"). R. at 31-88. On July 2015, the ALJ concluded that Turner was not disabled because he retained the residual functional capacity ("RFC") to perform a reduced range of light work, including a significant amount of other jobs that existed in the national economy. R. at 11-25.

In August 2015, Turner sought review of the ALJ's decision, which was denied by the Appeals Council in June 2016 and rendered the ALJ's decision the final decision of the Commissioner. R. at 1-7, 394. *See* 20 C.F.R. §§ 404.981, 416.1481. Turner filed the instant appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. **STANDARD**

To be eligible for DIB or SSI,[2] a claimant must have a disability under 42 U.S.C. § 423. "Disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423 (d)(1)(A). To determine whether or not a claimant is disabled, the ALJ applies a five-step process set forth in 20 C.F.R. § 404.1520(a)(4):

I.  If the claimant is employed in substantial gainful activity, the claimant is not disabled.

II. If the claimant does not have a severe medically determinable physical or mental impairment or combination of impairments that meets the duration requirement, the claimant is not disabled.

---

[2] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1505 *et seq.* The SSI regulations are substantially identical to the DIB regulations and are set forth at 20 C.F.R. § 416.901 *et seq.* For convenience, only the DIB regulations are set forth herein.

    III.     If the claimant has an impairment that meets or is equal to an impairment listed in the appendix to this section and satisfies the duration requirement, the claimant is disabled.

    IV.     If the claimant can still perform the claimant's past relevant work given the claimant's residual functional capacity, the claimant is not disabled.

    V.     If the claimant can perform other work given the claimant's residual functional capacity, age, education, and experience, the claimant is not disabled.

The burden of proof is on the claimant for the first four steps, but then it shifts to the Commissioner at the fifth step. *See Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

    The Social Security Act, specifically 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's denial of benefits.  When the Appeals Council denies review of the ALJ's findings, the ALJ's findings become findings of the Commissioner. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008); *Hendersen v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).  This Court will sustain the ALJ's findings if they are supported by substantial evidence.  42 U.S.C. § 405(g); *Craft*, 539 F.3d at 673; *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999).  "Substantial evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Craft*, 539 F.3d at 673 (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)).  In reviewing the ALJ's findings, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ.  *Nelson*, 131 F.3d at 1234.

    The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993).  However, the "ALJ's

decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). *See also*, *Craft*, 539 F.3d at 673. Further, "[a]n ALJ may not discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the [Court] to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). *See also*, *Craft*, 539 F.3d at 673 (stating that not all evidence needs to be mentioned, but the ALJ "must provide an 'accurate and logical bridge' between the evidence and the conclusion" (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004))). An ALJ's articulation of his analysis enables the Court to "assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review." *Craft*, 539 F.3d at 673.

### III. ANALYSIS

The ALJ found that Turner was not disabled and that he was capable to work in one of many jobs that are available in the national economy. R. at 24-25. Turner argues that the ALJ committed four errors in making his assessment. First, he claims that the ALJ failed to properly consider whether Turner's medical impairments met Listing 1.04. Second, Turner argues that the ALJ impermissibly "played doctor" and failed to obtain updated medical expert testimony as to medical equivalency for a listing. Third, he argues that the ALJ failed to properly account for Turner's restrictions in light of the medical evidence and created arbitrary limitations to establish his RFC. Finally, Turner alleges that the ALJ improperly analyzed the treating sources by only providing great weight to the physicians who did not appear to preclude him from all work.

The Court finds that the ALJ's RFC determination as well as the analysis of the opinion evidence of record were done in error.

## A. LISTING 1.04

Turner claims that the ALJ failed to properly discuss the medical evidence as it pertains to Listing 1.04.  Turner contends that he presented sufficient evidence to meet the required elements of that listing but the ALJ ignored such evidence in making his determination.  Further, although the ALJ noted that Turner's representative did not contend that any of his conditions met or medically equaled a listed impairment, Turner claims that the failure to do so was a result of the ALJ not providing the representative the opportunity to make an opening or closing statement at the hearing.

To establish that his impairment met or medically equaled the severity of Listing 1.04 (Disorders of the Spine), Turner must show that he had a spinal disorder resulting in nerve root or spinal cord compromise with (A) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and, if there is involvement in the lower back, positive straight-leg raising test; or (C) lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b. 20 C.F.R. pt. 404, Subpt. P, App'x 1 § 1.04.[3]

In his step three analysis, the ALJ stated, "The claimant's representative did not contend his conditions meet or medically equal a listed impairment.  I specifically considered listing 1.04.  The claimant's impairments, neither singly nor in combination, medically meets or equals the severity requirements of any listed impairment."  R. at 14.

---

[3] Turner only claims that his impairment met or medically equaled the severity of Listing 1.04A and/or 1.04C.  *See* Dkt. 15, p. 16.

5

He further concluded that nothing in Turner's medical records met or medically equaled a listing. *Id.*

Turner argues that the ALJ "ignored a significant number of records which are directly in line with the requirements of listing 1.04." *Id.* In support, Turner merely recites various medical records and perfunctorily concludes that the ALJ did not "address any of this evidence in light of the listing or even later in the body of the decision." *Id.*, p. 18. Turner fails, however, to provide any analysis as to how the cited evidence satisfies the criteria set forth in listed section 1.04A or 1.04C. It is Turner's burden to demonstrate that "his impairments meet a listing, and he must show that his impairments satisfy all various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). He must further establish that his impairments "meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Turner provides no substantive evaluation of the evidence in conjunction with Listing 1.04. Dkt. 15, pp.16-19. Such an underdeveloped argument would be deemed waived, *see Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 349 (7th Cir. 2009), but here, it is sufficient to conclude that Turner's has not satisfied his burden of demonstrating that his impairments meet the requisite criteria. *See Ribaudo*, 458 F.3d at 583.

## B. ADDITIONAL MEDICAL EXPERT TESTIMONY

Turner argues that the ALJ erroneously played doctor and interpreted medical records to determine that Turner did not meet or medically equal any listing. Dkt. 15, pp. 19-22. Turner takes issue with the ALJ's reliance on the opinion of the state agency reviewer, Dr. Guerrero, who found that Turner's impairments did not meet or medically

equal any listing. *Id.* Specifically, Turner states that Dr. Guerrero's decision to reserve the weight assigned to Dr. Burke's report for the Commissioner resulted in the ALJ "playing doctor" and that Dr. Burke's opinion "should have been granted some weight." *Id.*, pp. 19-20. Turner then cites a litany of cases that reversed ALJ decisions when the ALJ made independent medical findings and/or determination about a claimant's condition. *Id.*, pp. 19-21.

But, like his previous step three argument, simply pointing to the ALJ's reliance on Dr. Guerrero is not enough. Although the analysis of Dr. Burke's opinion was flawed, *see infra* pts. III, C, D, Turner does not cite to any other medical doctor who contradicted Dr. Guerrero's findings, let alone indicate that his impairments could have satisfied the requirements of a listing. *See Filus v. Astrue*, 694 F.3d 863, 867 (7th Cir. 2012) ("Because no other physician contradicted these two opinions, the ALJ did not err in accepting them."). Turner presents no evidence that would have allowed him to "satisfy all of the various criteria specified in the listing[,]" nor set forth any evidence that the ALJ's assessment at this step was in error and therefore, his claims at step three must fail. *Ribaudo*, 458 F.3d at 583.

### C. RFC DETERMINATION

Turner contends that the ALJ "never actually explains the rationale behind his finding of the RFC." Dkt. 15, p. 23. Turner makes this statement without showing any evidence that the ALJ should have considered in determining the RFC. Indeed, the ALJ considered substantial evidence and listed Turner's hearing testimony, his work activity following the accident, his treatment, his daily activities, and the objective medical

evidence. R. at 16-19. The ALJ also considered the opinion evidence of the record. R. at 19-22. Clearly the ALJ provided an explanation for determining Turner's RFC.

Turner also takes issue with the ALJ's assessment of his cane use and claims that the ALJ failed to address the issue of whether Turner requires the use of a cane to walk. Dkt. 15, pp 24-27. Turner cites to *Thomas v. Colvin*, where the 7th Circuit remanded a case for an ALJ's failure to address the need for a cane. 534 Fed. Appx. 546 (7th Cir. 2013). In *Thomas*, the ALJ "virtually ignored all the evidence in the record demonstrating Thomas's need for a cane," and only referenced the cane one time. *Id.* at 550. In the instant case, like his previous arguments, Turner cites no evidence that the ALJ failed to consider with respect to his cane. *See* Dkt. 15, pp.24-26. Moreover, the ALJ did discuss Turner's use of a cane, including Turner's hearing testimony on his need for the cane, the fact that it was not prescribed, and Turner's ability to walk without it. R. at 17-22.

There is a troubling aspect of the ALJ's RFC determination that Turner references, albeit obliquely, which is the ALJ's reliance on consultative examiner Dr. Gregg's opinion to determine Turner's physical limitations. The ALJ afforded great weight to Dr. Gregg's opinion and included all but one of the limitations in his RFC assessment. R. at 19 The ALJ adopted Dr. Gregg's opinion that Turner was capable of lifting ten pounds frequently and twenty pounds occasionally, would have difficulty with more than occasional operation of foot controls with the left foot, and would have difficulty with more than occasional overhead reaching, stooping, kneeling, crouching, and crawling. R. at 16. Dr. Gregg posited that Turner would be capable of standing and walking a total of two or three hours and sitting without limitation, but the ALJ found Turner would be able to sit no more than six hours without interruption and regularly scheduled breaks. *Id.* This latter

8

limitation was the only part of Dr. Gregg's physical assessment not adopted by the ALJ. The ALJ afforded "Dr. Gregg's medical opinion great weight, since despite the alleged symptoms, and consistent with some treating physicians, Dr. Gregg did not preclude the claimant from work." R. at 20.

This reliance on Dr. Gregg's assessment is misplaced. *Id.* Unless a treating source's opinion is given controlling weight, the ALJ must explain the weight given to the consulting physician's opinion. 20 C.F.R. § 404.1527(e)(2). Here, the ALJ simply agrees with Dr. Gregg's conclusion that Turner is capable of working rather than expound on why the suggested limitations are based on proper evidence. An ALJ must build a logical bridge from the evidence considered to his conclusions; simply adopting the conclusion of the consultative doctor does not suffice. *See Similia v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009). The fact that Dr. Gregg, along with some of Turner's treating physicians, found Turner capable of working should have no bearing on whether or not Dr. Gregg issued a sound medical evaluation of Turner's physical limitations. The ALJ, not Dr. Gregg, is to determine whether Turner is capable of working based on a host of factors that may not have been considered by Dr. Gregg.

Moreover, Dr. Gregg's opinion, which he provided on August 6, 2013, could not have considered the December 2014 and February 2015 reports by an orthopedic clinician that recommended Turner be "'off work' due to worsening of his condition." R. at 19.[4] With respect to these reports the ALJ simply concludes that "the [report] failed to

---

[4] At first glance, the ALJ's opinion would suggest that Dr. Gregg's examination occurred after the visit with Dr. Anderson in June 2015 because it is addressed in the next paragraph and follows a chronological summation of the opinion evidence in general. *See* R. at 19-20. The ALJ states that Dr. Gregg "assessed the claimant during the period at issue due to a 'back injury.'" R. at 20. A review of the record reveals that the examination

9

indicate quantified restrictions and failed to document the signs and symptoms attributable to the claimant being precluded from work." R. at 19-20. And while the ALJ may have dismissed these reports as incomplete, it is unclear what effect, if any, this potential degeneration of Turner's condition could have had on Dr. Gregg's limitations. The ALJ fails to account for this discrepancy when he afforded great weight to Dr. Gregg's opinion.

The ALJ failed to adequately justify his reasoning for determining Turner's RFC and therefore remand is warranted.

### D. OPINION EVIDENCE

Turner also contends that the ALJ erred in weighing the medical opinion evidence of Drs. Burke, Anderson, Rowe, and Gregg, the latter of which has already been addressed.

An ALJ is able to provide less weight to a treating doctor's opinion if it is internally inconsistent or conflicts with the other substantial evidence in the record, but the ALJ must articulate his reasons for providing lesser weight. 20 C.F.R. § 404.1527(c)(3), (4). Moreover, an "ALJ must give 'controlling weight' to a treating source's opinion if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.'" *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(2)). An ALJ may discount a treating physician's opinion if it "is inconsistent with the consulting physician's opinion, internally inconsistent, or based solely on the patient's complaints[.]" *Ketelboeter v. Astrue*, 550

---

actually occurred on August 6, 2013. R. at 469. Dr. Gregg's examination, on which the ALJ heavily relies, occurred nearly two years before Turner's disability hearing took place.

10

F.3d 620, 625 (7th Cir. 2008). "And whenever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision." *Id.*

The ALJ first addressed the opinion of Dr. Burke's January 2013 examination of Turner. R. at 19. Dr. Burke concluded the Turner was incapable of working at the time and possessed moderate to marked restrictions in range of motion in the cervical spine and marked discomfort to percussion of the lumbar spine. *Id.* The ALJ afforded Dr. Burke's medical opinion "limited weight because it is inconsistent with his examination findings and appears to be more in line with the claimant's subjective limitations as oppose[d] to the totality of the evidentiary record." *Id.* The ALJ cited Dr. Burke's medical findings but stated that he "failed to indicate the meaning of moderate or marked restrictions. Moreover, although treating clinicians, as referenced below, at times noted that the claimant should be precluded from work, their medical opinions are unsubstantiated by their treatment notes." *Id.* The ALJ then states that other treating physicians found Turner capable of working, despite his limitations.

It is unclear as to exactly why the ALJ discounted Dr. Burke's opinion. First, while the ALJ appears to infer that Dr. Burke's medical opinion is unsubstantiated by his treatment notes, it is certainly not clear. More importantly, however, is the fact that Dr. Burke did explain his marked or moderate restrictions in his report, writing that Turner's "neck has moderate to marked restrictions in motion on attempts at forward flexion, extension, lateral rotation, and lateral bend to half-normal." R. at 397. Thus, one of the predicate reasons for discounting Dr. Burke's opinion – that the opinion is not properly substantiated – was made in error. It is unclear whether the ALJ would have assigned

11

more weight to Dr. Burke if he had reviewed Dr. Burke's definition of "moderate or marked restrictions."

The ALJ also reviewed Dr. Rowe's July 2013 report, which stated that Turner was unable to perform any job without a reasonable accommodation. R. at 19. The ALJ recited the physical limitations Dr. Rowe assigned to Turner and contrasted them with Turner's hearing testimony. The ALJ then stated, "I still afford Dr. Rowe's medical opinion some weight because, while the objective findings in his treatment notes fail to support these any [sic] limitations and his limitations are consistent with those of the claimant, Dr. Rowe failed to totally preclude the claimant from work." *Id.* It is unclear why Dr. Rowe's opinion was only provided some weight; the ALJ seems to indicate that Dr. Rowe's limitations are not supported by his treatment notes but nonetheless are in line with Turner's subjective testimony. Even assuming that the ALJ's confusing statement is a finding that Dr. Rowe's opinion is "inconsistent with other substantial evidence" and therefore adequately discounted, *see* 20 C.F.R. § 404.1527(c)(2), the ALJ's other reasoning for providing some weight to Dr. Rowe's opinion cannot stand. Indeed, the ALJ offered some weight to Dr. Rowe's opinion because he did not totally preclude Turner from work, which, as was the problem with Dr. Gregg's opinion, is not a permissible reason for assigning weight to a physician's opinion. *See infra*, pt. III, C. Thus, the ALJ has failed to provide a proper reason for discounting or supporting Dr. Rowe's opinion.

The same error was made in evaluating Dr. Anderson's opinion. R. at 20. The ALJ considered the various physical limitations that Dr. Anderson set forth and afforded "Dr. Anderson's medical opinion some weight. While her treatment notes fail to indicate abnormalities consistent with the aforementioned limitations and are not in line with the

12

claimant's subjective limitations, she failed to opine that the claimant was 'totally unable to participate in training activities/employment due to physical or mental limitations.'" *Id.*

The ALJ erred in assessing the weight provided to Drs. Burke, Rowe, and Anderson, and, as discussed in the previous section, Gregg; therefore remand is necessary.

### IV. CONCLUSION

For the reasons stated herein, the Court concludes that Defendant Nancy Berryhill, Acting Commissioner of Social Security, erred in her decision to deny Plaintiff Harold Turner's application for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416, 423, & 1382c(a)(3). Accordingly, this Court **VACATES** the Commissioner's decision and **REMANDS** this matter for further proceedings consistent with this entry. The Court will enter judgment accordingly.

IT IS SO ORDERED this 22d day of March, 2017.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov